## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PEDRO GONZALEZ-TORRES,
*Plaintiff*,

v.

No. 3:19-cv-1139 (VAB)

LIEUTENANT ROY, et al.
*Defendants.*

## INITIAL REVIEW ORDER

On July 8, 2019, Pedro Gonzalez-Torres ("Plaintiff"), an inmate currently housed at

MacDougall-Walker Correctional Institute in the custody of the Connecticut Department of

Correction ("DOC"), filed this civil rights Complaint under 42 U.S.C. § 1983 against Lieutenant

Roy, Warden William Mulligan, Commissioner Rollin Cook, Counselor Carter, Counselor

Zlatan Jahic, Mailroom Supervisor Weldon,[1] and Property Officer Burns. Compl, ECF No. 1

(Jul. 8, 2019). Mr. Gonzalez-Torres is proceeding *pro se* and *in forma pauperis*. Order*, ECF No.

11 (Aug. 15, 2019).

He alleges violation of his First Amendment, Fifth Amendment, Eighth Amendment and

Fourteenth Amendment rights under the United States Constitution, and he requests declaratory

and injunctive relief and compensatory and punitive damages.

After an initial review, the Complaint is **DISMISSED**.

---

[1] Mail Officer Weldon is included in the description of the parties but his name does not appear in the
caption. Mr. Gonzalez-Torres has, however, provided allegations against Mail Officer Weldon. "[C]ourts
have found *pro se* complaints to sufficiently plead claims against defendants not named in
the caption when there are adequate factual allegations to establish that the plaintiff intended them as
defendants." *Imperato v. Otsego Cty. Sheriff's Dep't*, C.A. No. 313-CV-1594 (BKS/DEP), 2016 WL
1466545, at *26 (N.D.N.Y. Apr. 14, 2016).

For all of his claims, except his Fifth Amendment claim, this dismissal is without prejudice. Because Mr. Gonzalez-Torres cannot have a plausible Fifth Amendment claim against the State of Connecticut or its officials, the dismissal of this claim is with prejudice.

To the extent that Mr. Gonzalez-Torres can remedy the deficiencies identified by this Order for his other claims, he may file an amended complaint by **November 13, 2020**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural Background

Mr. Gonzalez-Torres has filed two civil actions in the District Court of the District of Connecticut that both concern alleged mail-tampering by Lieutenant Roy.

### 1.    Prior Action

On March 27, 2019, Mr. Gonzalez-Torres filed a Complaint alleging that Lieutenant Roy had violated his equal protection and due process rights under the Fifth and Fourteenth Amendments by confiscating his outgoing mail on June 20, 2018. Compl., No. 3:19-CV-458 (VAB), ECF No. 1 (Mar. 27, 2019) ("Prior Compl.").

On April 16, 2019, the Court granted Mr. Gonzalez-Torres's motion to proceed *in forma pauperis*. Order, No. 3:19-CV-458 (VAB), ECF No. 10 (Apr. 16, 2019).

On October 29, 2019, the Court denied Mr. Gonzalez-Torres's request to appoint counsel without prejudice. Order, No. 3:19-CV-458 (VAB), ECF No. 15 (Oct. 29, 2019).

On January 23, 2020, after review of the Complaint under 28 U.S.C. § 1915A(b), the Court issued its Initial Review Order, concluding that Mr. Gonzalez-Torres's claims were not plausible but permitting him an opportunity to file an amended complaint with respect to his Fourteenth Amendment Due Process and Equal Protection claims. Initial Review Order, No. 3:19-CV-458 (VAB), ECF No. 16 (Jan. 23, 2020).

On February 10, 2020, Mr. Gonzalez-Torres filed a Notice of Voluntary Dismissal, stating that he wished to dismiss the action. Notice of Voluntary Dismissal, No. 3:19-CV-458 (VAB), ECF No. 17 (Feb. 10, 2020) ("Vol. Dismiss.").

On February 13, 2020, the Court closed that case.

### 2.    This Complaint

On July 8, 2019, before the Initial Review Order of Mr. Gonzalez-Torres's first Complaint was issued, he filed another Complaint alleging constitutional claims against Lieutenant Roy, Warden Mulligan, Commissioner Cook, Counselor Carter, Counsel Jahic, Mailroom Supervisor Weldon, and Property Officer Burns. *See* Compl. at 2–4. Similar to his prior case against Lieutenant Roy, this Complaint alleges Fourteenth Amendment due process and equal protection violations against Lieutenant Roy, based on the June 20, 2018 mail confiscation. *Id.* at 15 ¶ 54. Because Mr. Gonzalez-Torres has already voluntarily dismissed the Fourteenth Amendment due process and equal protection claims stemming from the June 20, 2018 mail confiscation, Vol. Dismiss., the Court will not consider these claims in the following initial review of this matter.

The Court granted Mr. Gonzalez-Torres's motion for leave to proceed *in forma pauperis* on August 15, 2019. Order, ECF No. 11 (Aug. 15, 2019).

The Court denied his motion for appointment of counsel without prejudice to renewal on October 30, 2019. Order, ECF No. 12 (Oct. 30, 2019).

### B.    Factual Allegations

On July 12, 2017, Mr. Gonzalez-Torres allegedly mailed his habeas attorney more than one hundred pages of legal documents pertaining to his habeas case. Compl. at 8 ¶ 3. Allegedly,

in a letter dated May 3, 2018 to Mr. Gonzalez-Torres, the habeas attorney explained the

following:

> On June 5, 2017, I sent you an introduction letter, introducing myself as your attorney and also requesting that you forward our firm any and all relevant paperwork that you have in your possession in order for us to make copies and return them to you. Thereafter, on July 12, 2017, you forwarded our office some legal documents, with an 8 page letter as well, that you were able to gather during pre-trial.  The letter also had some other information as well, that is not pertinent to this letter.   There were approximately 41 pages of documents that [] you forwarded to us for our review. Upon receipt of that letter, my office scanned the entirety of the file and it was placed in both [] your physical and digital file folder.
>
> On January 3, 2018, our office received a letter from you requesting all "Brady" material that you forwarded to us.  On January 11, 2018, I responded to the letter, requesting clarification as to the materials that you requested, as well as returning some of the documentation that you requested. Thereafter, on February 27, 2018, you requested that I return the documents that you forwarded to me yet again and on March 14, 2018, I returned the original copies of the documents you requested once again. On April 24, 2018, my paralegal received a phone call from Counselor Jahic indicating that you were waiting on your package of materials, that was approximately 60 pages of files, to be returned to you that you sent to us.  On April 30, 2018, my paralegal returned to you a copy of the package of materials that you requested.

*Id*. at 28–29, 8 ¶ 5.

On June 20, 2018, Mr. Gonzalez-Torres alleges that he was confronted by Lieutenant

Roy and Property Officer Burns at Admittance and Processing. *Id*. at 8–9 ¶¶ 8–9. Lieutenant Roy

allegedly informed him that his mail was contraband and that he would keep two manila

envelopes. *Id*. at 9 ¶ 10. According to the Inmate Property Status and Receipt, the materials were

considered to be UCC Sovereign materials.[2] *Id*. at 47. Mr. Gonzalez-Torres allegedly responded

---

[2] In *United States v. Ulloa*, the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." 511 F. App'x. 105, 107 n.1 (2d Cir. 2013).

that if the two manila envelopes were contraband, Lieutenant Roy would have taken him to segregation. *Id.* at 9 ¶ 10. Property Officer Burns allegedly stated that Mr. Gonzalez-Torres is not submitting the proper paperwork. *Id.* ¶ 11. Mr. Gonzalez-Torres alleges that he requested return of his property and informed Lieutenant Roy that he was stealing his property if he did not return it. *Id.* ¶¶ 13–14. Lieutenant Roy allegedly refused to return the manila envelopes and demanded that Mr. Gonzalez-Torres sign the Inmate Status and Receipt. *Id.* ¶ 15. Mr. Gonzalez-Torres alleges that he did not sign. *Id.*

On or about October 10, 2018, Mr. Gonzalez-Torres alleges that he gave Counselor Carter a manila envelope containing legal documents to send to Mr. Gonzalez-Torres's family so that Lieutenant Roy and Mailroom Officer Weldon would not be able to steal his mail. *Id.* at 10 ¶ 18. On or about October 24, 2018, however, Mr. Gonzalez-Torres alleges that he called his family and was informed that they had not received his package. *Id.* ¶ 19. Mr. Gonzalez-Torres alleges that Counselor Carter was instructed by Lieutenant Roy and Mailroom Officer Weldon to retaliate against him and prevent him from mailing anything out of the facility. *Id.* ¶ 21. On or about November 5, 2018, Mr. Gonzalez-Torres allegedly wrote to the mailroom to inquire about his package, and Lieutenant Roy allegedly informed Mr. Gonzalez-Torres that he was not holding his package and that all ingoing and outgoing mail is reviewed. *Id.* ¶ 22.

On or about January 11, 2019, Mr. Gonzalez-Torres allegedly wrote to Inmate Accounts to resolve why funds were taken from his account for the package that was never mailed to his family. *Id.* at 11 ¶ 27. On or about January 12, 2019, he alleges that he wrote to Counselor Carter asking for copies of his Special Request Form Receipts relevant to his account, but Counselor Carter allegedly disposed of the copies. *Id.* ¶ 28. Mr. Gonzalez-Torres believes that Counselor Carter was covering for Lieutenant Roy's misconduct. *Id.*.

On or about January 26, 2019, Mr. Gonzalez-Torres allegedly received a response from Joyce Gosselin of Inmate Accounts that her review of his account did not show a deduction was made on or about October 10, 2018. *Id.* ¶ 31. Mr. Gonzalez-Torres alleges that Lieutenant Roy took Mr. Gonzalez-Torres's package and sent Counselor Carter a copy of his Special Request Form to make it appear that his package had been mailed as a form of retaliation for the civil action Mr. Gonzalez-Torres filed before the Chief U.S. District Judge Stefan Underhill, *Gonzalez-Torres v. Newson et al,* No. 17-CV-455 (SRU).[3] *Id.*

On or about February 9, 2019, Mr. Gonzalez-Torres alleges that he filed a Level 2 grievance after a prior grievance was denied as untimely. *Id.* at 11–12 ¶¶ 32, 33. Mr. Gonzalez-Torres allegedly explained that he had filed a timely grievance that was not answered, and that he had an ongoing problem with Lieutenant Roy stealing his mail. *Id.* ¶ 33. On or about February 21, 2019, Mr. Gonzalez-Torres allegedly appealed the Level 2 grievance again because it had not been answered. *Id.* at 12 ¶ 34. Mr. Gonzalez-Torres alleges Lieutenant Roy intercepted each of his Level 2 grievances. *Id.* at 11–12 ¶¶ 33–34.

On or about March 1, 2019, Mr. Gonzalez-Torres alleges that he wrote to Warden Mulligan about Lieutenant Roy. *Id.* at 12 ¶ 35. His letter was not answered. *Id.*

On or about March 13, 2019, Mr. Gonzalez-Torres alleged that he mailed home some legal documents for his family to send by certified mail to the Department of Children and Families ("DCF"). *Id.* ¶ 38. Mr. Gonzalez-Torres alleges that he wanted proof that the documents

---

[3] In this civil action, Mr. Gonzalez-Torres alleged claims of deliberate indifference to his medical needs related to his back pain during his arrest and transport for arraignment against Judge John F. Newson, State Trooper Chivvers, Supervisor Conto, the City of Norwich, State Trooper Gardner, the Department of Transportation, the Department of Public Safety, State Trooper Dale B. Degaetano, State Trooper Browning, Sergeant Benedict A. Liberatore, Norwich City Hall, State Police Troop E, Griswold City Hall, Jewett City City Hall, and Montville City Hall. Compl., No. 17-CV-455 (SRU), ECF No. 1 (Mar. 21, 2017).

were sent to the DCF, but Lieutenant Roy allegedly would not let him directly send them via certified mail because the Department of Children and Families was not considered a legal entity. *Id.*

On or about March 20, 2019, Mr. Gonzalez-Torres received a response from Ms. Gosselin indicating that a deduction of $2.68 was never made to his inmate account. *Id.* ¶ 39.

On or about March 27, 2019, Mr. Gonzalez-Torres allegedly wrote to Commissioner Cook regarding his concerns about Lieutenant Roy harassing him and stealing his mail. *Id.* at 13 ¶ 40.

Mr. Gonzalez-Torres alleges that Mailroom Supervisor Weldon told his court-appointed attorney that legal and regular mail are treated the same under the DOC Administrative Directive 10.7. *Id.* ¶ 42. Mr. Gonzalez-Torres alleges the DOC Rules require legal mail to be treated differently than regular mail and Mailroom Supervisor Weldon allegedly acted outside of those rules and allegedly openned Mr. Gonzalez-Torres's legal mail that was marked for Mr. Gonzalez-Torres's attorney. *Id.* at ¶¶ 43–44.

On or about April 13, 2019, Mr. Gonzalez-Torres received a pink slip from Lieutenant Roy, stating: "Envelope contains UCC (Sovereign) materials. Returned to Sender / Not Deliverable As addressed / Unable to Forward." *Id.* at 98; *see also id.* at 13 ¶ 45. Mr. Gonzalez-Torres alleges, however, that mail to his family could not be undeliverable because his family has lived at the same address for nearly ten years. *Id.* at 14 ¶ 47.

On or about April 15, 2019, Mr. Gonzalez-Torres allegeedly sent an Inmate Request Form seeking to have video footage preserved to show that the notice Lieutenant Roy sent Mr. Gonzalez-Torres was delivered on April 15, 2019 not March 13, 2019. *Id.* at 14 ¶ 48. Mr.

Gonzalez-Torres believes this footage will show Lieutenant Roy is taking his mail, but not serving him with notice until after 30 days have expired. *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'").

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F. 3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 100–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Mr. Gonzalez-Torres asserts violation of his rights under the First, Fifth, Fourteenth, and Eighth Amendments to the United States Constitution. Compl. at 15 ¶ 54.

Mr. Gonzalez-Torres alleges: Counselor Jahic opened and stole some of the pages from his legal document; *Id.* at 8 ¶ 6;  Counselor Carter was instructed by Lieutenant Roy and Weldon to retaliate against Mr. Gonzalez-Torres by preventing Mr. Gonzalez-Torres from mailing anything out of the facility; *Id.* at 10 ¶ 21; Lieutenant Roy tampered with his mail, stole his mail, and intercepted his grievances. *Id.* at 11–12 ¶¶ 33–34; and, Mailroom Supervisor Weldon wrongfully opened Mr. Gonzalez-Torres's legal mail that was marked for Mr. Gonzalez-Torres's attorney. *Id.* at 13 ¶ 44.

The Court will address the various claims in turn.

A.      **The Claims Against Warden Mulligan And Commissioner Cook**

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (citing *Farrell v. Burke*, 449 F. 3d 470, 484 (2d Cir. 2006)). "A general allegation that [defendants] failed to train subordinates . . . is insufficient to establish personal involvement, absent some factual connection between their failure to train and the harm that eventually befell Plaintiff." *Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016). To demonstrate personal involvement of a supervisory official, a plaintiff is required to plead that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]  In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir.

---

[4] The Second Circuit has observed that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  However, without further Second Circuit guidance on this issue, the Court assumes that the categories outlined in *Colon* remain valid.

2014); *See also Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury).

Mr. Gonzalez-Torres asserts that Warden Mulligan and Commissioner Cook have violated his constitutional rights. Compl. at 15 ¶ 54. The Complaint, however, contains no allegations suggesting the personal involvement of either Warden Mulligan or Commissioner Cook as required for a damages claim under 42 U.S.C. § 1983. Mr. Gonzalez-Torres has alleged that he sent a letter complaining about Lieutenant Roy to Warden Mulligan, but he has not alleged facts establishing Warden Mulligan's awareness of his letter or his complaints against Lieutenant Roy. *See id.* at 13 ¶ 40. Absent allegations to establish Warden Mulligan's awareness of any constitutional violations, Warden Mulligan cannot be held liable for damages due to Mr. Gonzalez-Torres's § 1983 claims. *Cf. Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019) (supervisory officials who were informed of violation but failed to remedy the violation may be held liable).

Accordingly, the individual capacity claims against Warden Mulligan and Commissioner Cook will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### B.   The Fifth Amendment Claim

Mr. Gonzalez-Torres cannot state a claim under the Fifth Amendment. The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 466–67 (S.D.N.Y. 2009). Mr. Gonzalez-Torres has not alleged that a federal official violated his Fifth Amendment rights.

Accordingly, his Fifth Amendment claim will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### C.      The First Amendment Mail Tampering Claim

Mr. Gonzalez-Torres alleges that Counselor Jahic, Counselor Carter, Lieutenant Roy, Mailroom Supervisor Weldon, and Property Officer Burns violated his constitutional rights by tampering with his outgoing mail and are liable under § 1983. Compl. at 8–13 ¶¶ 6, 10, 21, 33, 34, 44.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

### 1.      Access to the Courts[5]

To prevail on a claim of denial to access to the courts, the plaintiff must show that the defendants' actions were "deliberate and malicious," and that the actions caused him to suffer an "actual injury." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010). To demonstrate an actual injury, the plaintiff must show that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir. 1997). A delay in the inmate's ability to work on a legal action or communicate with the courts, however, is not a sufficient basis for a constitutional violation. *See Galarza v. Semple*, C.A. No. 3:18-cv-00773 (JAM), 2018 WL 3935042, at *2 (D. Conn. Aug. 16, 2018).

Here, Mr. Gonzalez-Torres does not appear to be advancing a claim based on denial of his right to access to the courts. To the extent that he is asserting such a claim, he has not alleged

---

[5] The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, Section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

facts indicating that defendants' alleged tampering with his legal mail caused him actual injury, such as a missed filing date or inability to present his claim to the court.

Accordingly, any claim alleging violation of his constitutional rights for denial of access to the courts is dismissed as not plausible under 28 U.S.C. § 1915A(b).

### 2.    Free Flow of Mail

A prisoner also has a First Amendment right to "free flow of incoming and outgoing mail." *Davis*, 320 F.3d at 351. "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Id.* (quotation marks and alterations omitted).

A single incident is generally insufficient to establish a constitutional violation. *See Steve v. Arnone*, 627 Fed. App'x 50 (2d Cir. 2016) (summary order) (affirming dismissal of claim based on only one incident of interference with legal mail). However, "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). Generally, a plaintiff must allege "specific allegations of invidious intent or of actual harm where the incidents of mail tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.; see also Riley v. Semple*, C.A. No. 3:17-CV-45 (VAB), 2017 WL 507214, at *3 (D. Conn. Feb. 7, 2017).

### a.    Claim Against Counselor Jahic

Mr. Gonzalez-Torres's claim that Counselor Jahic tampered with the legal mail he sent on July 12, 2017, Compl. at 8 ¶ 6, does not establish an ongoing practice of unjustified censorship. In fact, his allegations do not establish a connection between this incident and the other allegations involving Lieutenant Roy, Property Officer Burns, Mailroom Officer Weldon, and Counselor Carter.

Moreover, Mr. Gonzalez-Torres's assertion that Counselor Jahic had to have stolen his mail because he referred to its number of pages is conclusory. The Court is not bound to accept "conclusory allegations." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In any event, the claim against Counselor Jahic concerns only one incident, which is insufficient to state a plausible First Amendment violation. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation.").

Accordingly, the claim against Counselor Jahic will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### b.   Claim Against Counselor Carter, Mailroom Supervisor Weldon, and  Lieutenant Roy

Mr. Gonzalez-Torres asserts that Counselor Carter was instructed by Lieutenant Roy and Mailroom Officer Weldon to retaliate against Mr. Gonzalez-Torres by preventing Mr. Gonzalez-Torres from mailing anything out of the facility. Compl. at 10 ¶ 21. This claim of interference with his free flow of mail, however, is conclusory, speculative and not supported by factual allegations. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 557) (noting insufficiency of "naked assertions" devoid of "further factual enhancement").

Accordingly, it cannot form the basis of a claim against Counselor Carter, Lieutenant Roy, or Mailroom Officer Weldon that they prevented his mail sent on October 10, 2018 from

leaving the facility, and this claim will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### c.    Claim against Lieutenant Roy

 Mr. Gonzalez-Torres's asserts that Lieutenant Roy must have taken his mail sent on October 10, 2018, and he believes that Lieutenant Roy intercepted his Level 2 grievances.[6] Compl. at 11–12 ¶¶ 33–34. These allegations are also insufficient because they are conclusory and speculative. Mr. Gonzalez-Torres "must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Kleinman v. Elan Corp., plc,* 706 F.3d 145, 152 (2d Cir. 2013); *Jackson v. County of Rockland*, 450 Fed. App'x 15, 18–19 (2d Cir. 2011) (noting conclusory allegations of illegal surveillance or falsified evidence are insufficient to raise plausible inference of constitutional torts).

Accordingly, this claim against Lieutenant Roy will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### d.    Claim Against Officer Weldon

Mr. Gonzalez-Torres seeks to assert a § 1983 claim based on Mailroom Officer's Weldon's alleged violation of Administrative Directive 10.7 when handling his mail. Compl. at 13 ¶ 43. A defendant's failure to comply with prison regulations or administrative directives, however, does not constitute a basis for relief under § 1983. "[A] prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is

---

[6] Moreover, "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and quotation marks omitted).

liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, C.A. No. 3:18-cv-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).

Accordingly, this claim is dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### e.    Claim against Lieutenant Roy and Property Officer Burns

The Court will consider whether Mr. Gonzalez-Torres has established an ongoing practice of mail interference, based on Lieutenant Roy and Property Officer Burns's alleged designation of Mr. Gonzalez-Torres's materials as contraband on June 20, 2018, Compl. at 8–9 ¶¶ 8–10, and Lieutenant Roy's alleged designation of Mr. Gonzalez-Torres's alleged legal mail as UCC sovereign materials on April 13, 2019, *id*. at 13 ¶ 45. The Court notes that as of July 5, 2018, the DOC implemented a policy, which added sovereign citizens to its list of disruptive Security Risk Groups. *See Miller v. Semple*, C.A. No. 3:18-CV-01769 (JAM), 2019 WL 6307535, at *2 (D. Conn. Nov. 25, 2019).

Because there are only two incidents at issue, Mr. Gonzalez-Torres must assert specific allegations of an invidious intent. *See Tutora v. Gessner*, C.A. No. 17-CV-9517 (KMK), 2019 WL 1382812, at *6 (S.D.N.Y. Mar. 27,  2019). Even construed most liberally, Mr. Gonzalez-Torres's allegations about the two incidents of mail tampering occurring within approximately ten months fail to suggest an ongoing practice of censorship with respect to Mr. Gonzalez-Torres's outgoing mail, particularly in light of the stated security concern about the mail containing UCC Sovereign materials. *See Keyes v. Annucci*, C.A. No. 9:18-CV-0372 (GTS/DJS), 2019 WL 4602240, at *15–16 (N.D.N.Y. Sept. 23, 2019) (finding no regular or unjustified interference based on two incidents of mail tampering, one of which was explicitly based on security concerns).

Accordingly, this claim will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### D.    The First Amendment Retaliation Claim

"To establish a First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." (internal quotation marks and citations omitted)); *Booth v. Comm'r of Corr.*, C.A. No. 19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity."). Although not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim. *See McIntosh v. United States*, C.A. No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353). In order to allege causation, the inmate must state

facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (second alteration in original) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, C.A. No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).

Mr. Gonzalez-Torres alleges that Lieutenant Roy retaliated against him because Mr. Gonzalez-Torres had filed a federal civil action, No. 3:17-CV-455 (SRU). Compl. at 11 ¶¶ 31, 33. He alleges that Lieutenant Roy's retaliatory action included interfering with his ability to send mail, harassing him, and intercepting his grievances. *Id.*

Here, Mr. Gonzalez-Torres has not sufficiently alleged a causal connection between Lieutenant Roy's conduct and the filing of his prior lawsuit about his medical needs for his back pain during his arrest and transport for arraignment. *See* No. 3:17-CV-455 (SRU). First, there is nothing in the Complaint suggesting that Lieutenant Roy had a relationship with the defendants

in his earlier case. Second, the Complaint does not allege that Lieutenant Roy was even aware of Mr. Gonzalez-Torres's civil action before Judge Underhill in the matter of No. 3:17-CV-455 (SRU). *See Schlosser v. Manuel*, C.A. No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where plaintiff had not alleged that defendant was aware that he had filed a grievance).

Accordingly, the First Amendment retaliation claim against Lieutenant Roy will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### E.     The Fourteenth Amendment Due Process Claim

Mr. Gonzalez-Torres alleges that defendants have violated his Fourteenth Amendment right to due process by confiscating his outgoing mail and its contents without due process.[7] Compl. at 15 ¶ 54. The Court construes this claim as alleging a violation of his Fourteenth Amendment right to procedural due process.

A claim of a violation of procedural due process "proceeds in two steps: [w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Here, the only cognizable property interest of which Mr. Gonzalez-Torres claims he was deprived was his outgoing mail. However, "[a]n unauthorized intentional deprivation of property" by an individual acting under color of law does not constitute a violation of Fourteenth Amendment procedural due process "if a meaningful post[-]deprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1983). Thus, a prisoner can state a due process claim for loss or destruction of property only if the state has not created adequate post-

---

[7] Mr. Gonzalez-Torres has voluntarily dismissed the claim that his mail was confiscated on June 20, 2019,. *See* Notice of Voluntary Dismissal, Dkt. No. 3:19-CV-458 (VAB), ECF No. 17 (Feb. 10, 2020).

deprivation remedies. *See Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (citing *Hudson*, 468 U.S. 517, 533 (1984) ).

Both the DOC and the State of Connecticut have provided inmates with a remedy for lost or destroyed property. *See* DOC Administrative Directive 9.6(16)(B). Under Connecticut General Statutes § 4–141, *et seq*., a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for his claim. *See* Conn. Gen. Stat. § 4–142. Thus, a prisoner must first utilize the administrative remedy and then may proceed to the Claims Commission if his claim is denied. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (finding no due process violation for unauthorized destruction or damage of property because the State of Connecticut provides inmates with an adequate remedy for lost or destroyed property pursuant to Administrative Directive 9.6(16)(B) and Connecticut General Statutes ¶ 4–142).

As a result, Mr. Gonzalez-Torres must seek relief for a deprivation of his property through these adequate post-deprivation remedies.

Accordingly, this claim will be dismissed under 28 U.S.C. § 1915A(b).

### F.    The Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, C.A. No. 3:18-CV-446 (MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (*quoting Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

A plaintiff may also bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Witt v. Village of Mamaroneck*, C.A. No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (citation and quotation marks omitted).

Mr. Gonzalez-Torres also claims that defendants deprived him of equal protection of the laws under the Fourteenth Amendment.[8] Compl. at 15 ¶ 54.

---

[8] As noted above, to the extent that Mr. Gonzalez-Torres alleges this equal protection claim is based on Lieutenant Roy's treatment of his mail on June 20, 2019, he has already voluntarily dismissed that claim. *See* Notice of Voluntary Dismissal, Dkt. No. 3:19-CV-458 (VAB), ECF No. 17 (Feb. 10, 2020).

Here, Mr. Gonzalez-Torres does not allege that he was treated differently on the basis of a suspect classification. To the extent that he brings a class of one equal protection claim, this claim also fails because he has not alleged that the defendants treated him differently than any other inmate. His allegations do not establish an inference that no rational basis exists for the difference in treatment between Mr. Gonzalez-Torres and any other inmate.

Accordingly, his equal protection claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### G.      The Eighth Amendment Claim

Mr. Gonzalez-Torres asserts a violation of the Eighth Amendment. Compl. at 15 ¶ 54. He has not alleged facts, however, suggesting a claim that falls within Eighth Amendment protection against "cruel and unusual punishment." U.S. Const., amend. VIII.  The Cruel and Unusual Punishments Clause was designed to protect those incarcerated from "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977).  Here, Mr. Gonzalez-Torres allegations do not indicate that he has suffered from unnecessary and wanton infliction of pain.

Accordingly, his claim of Eighth Amendment violation will be dismissed as not plausible under the 28 U.S.C. § 1915A(b).

### H.      Official Capacity Claims

Mr. Gonzalez-Torres seeks declaratory and injunctive relief against defendants in their official capacities. Compl. at 116. The claims for equitable relief are dismissed because the Court has concluded that Mr. Gonzalez-Torres's constitutional claims should be dismissed as not plausible under 28 U.S.C. 1915A(b)(1). *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-

07 (S.D.N.Y. 2010) (finding that requests for injunctive relief are remedies and dismissing them with the underlying claims).

Accordingly, the claims for declaratory or injunctive relief are also dismissed as not plausible under the 28 U.S.C. § 1915A(b)(1).

## ORDERS

Based on the foregoing, the Complaint is **DISMISSED**.

For all of these claims, except the Fifth Amendment claim, this dismissal is without prejudice. Because Mr. Gonzalez-Torres cannot have a plausible Fifth Amendment claim against the State of Connecticut or its officials, the dismissal of this claim is with prejudice.

To the extent that Mr. Gonzalez-Torres can remedy the deficiencies identified by this Order for his other claims, he may file an amended complaint by **November 13, 2020**.

It is so ordered.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of October, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE